IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
IN AND FOR SUSSEX COUNTY

SHARON KRUTZ,                          )
COMFORT PALACE, LLC.                   )
                                       )
        Defendants/Appellants,         )
                                       )
        v.                             )        C.A. No. CPU6-12-000770
                                       )
SUSAN POMERANTZ,                       )
                                       )
        Plaintiff/Appellee             )
                                       )

Submitted August 11, 2015
Decided October 8, 2015

Dean Campbell, Esq. for Defendants/Appellants
Patrick Scanlon, Esq. for Plaintiff/Appellee

## ORDER ON APPEAL ON DEFENDANT'S
## MOTION TO VACATE THE DEFAULT JUDGMENT

The Court is called to determine whether to vacate default judgment in favor of

the Plaintiff/Appellee, Susan Pomerantz, and against Defendant/Appellant, Sharon

Krutz. For the reasons outlined below, the motion to vacate the default judgment

entered by the Justice of the Peace Court is denied.

### Procedural History

1

Pomerantz filed suit against Krutz and Comfort Palace in the Justice of the Peace Court on February 24, 2012.[1] Trial in J.P. Court was scheduled for April 25, 2012 at 1:00 p.m. On April 17, 2012, Krutz sent a letter to the J.P. Court detailing various medical ailments to put the Court on notice that she may need to sit during court as she could not stand for long periods of time. On the morning of April 25, 2012, Krutz faxed a request for a continuance to the J.P. Court approximately an hour and a half prior to the 1:00 p.m. trial. Krutz did not appear and the J.P. Court entered a default judgment at Pomerantz's request.

On May 2, 2012, Krutz filed a motion to vacate the default judgment in J.P. Court. On May 25, 2012, a hearing was held in J.P. Court, which resulted in a denial of Krutz's motion to vacate the default judgment. On May 31, 2012, Krutz appealed the denial of the motion to vacate default judgment to this Court.[2]

On June 30, 2014, a hearing on the motion to vacate the default judgment was held in this Court. The Court took testimony from the parties at this hearing. On July 18, 2014, this Court denied Krutz's motion to vacate the default judgment, finding that the J.P. Court Magistrate had not abused their discretion in failing to vacate the default

---

[1] Comfort Palace was later dismissed from the suit.
[2] Krutz's appeal was filed as a generic notice of appeal. However, the parties and this Court later all agreed that the issue on appeal was limited to the J.P. Court's denial of the motion to vacate the default judgment.

2

judgment under J.P. Court Rule 60(b). On August 4, 2014, Krutz appealed this Court's order to the Superior Court.

On June 12, 2015, the Superior Court reversed this Court's order and remanded the proceedings for a new hearing. The Superior Court instructed this Court to conduct a new hearing on the motion to vacate the default judgment *de novo* **and** not to apply an abuse of discretion standard.

On remand, Krutz filed a motion to vacate the default judgment on July 24, 2015. On August 3, 2015, Pomerantz filed a response motion. A hearing was held in this Court on August 11, 2015.

## Facts

This case is the result of a residential property dispute. Trial in J.P Court was scheduled for April 25, 2012. On April 17, 2015, eight days before the scheduled trial, Krutz filed a letter with the J.P. Court. In her letter, Krutz wrote:

"I am informing the court of my disabilities, I cannot stand for long periods of time due to the fact that I am currently recovering from post concussion symptoms due to a fall. I have very severe nausea, and dizziness at times and with [sic] under stress it makes my condition worse.

In addition I have a Brain Aneurysm, my doctors advised me I have to be very careful of my stress and blood pressure, due to the fact it could affect the aneurysm.

Also I am letting the court know that I cannot afford an attorney to help me due to my very low income and being disabled. I am advising the court ahead of time of my problems, the trial date is April 25, 2012 @ 1:00pm."[3]

According to Krutz, at 8:51 a.m. on April 25, 2012, the day of trial, she contacted the court by phone to request a continuance. Krutz was told that she would have to put her continuance request in writing. At 11:42 a.m., the J.P. Court received a fax from Krutz in which Krutz wrote:

"I am requesting a continuance for another date because I cannot appear today, due to the fact my witness was just served on April 24, 2012 to appear in court on April 25, 2012. I originally mailed in my request [subpoena] on April 14, 2012.

I received two very angry emails from my witness on April 24, 2012, in one of the emails it mentions she was just served on April 24, 2012, to appear on April 25, 2012 which is not possible. My witness Julie Banks mentions she will be in touch with the court to provide the documentation that is needed. The second email mentions that if she is held in contempt of court, she will seek personal action against myself.

Another reason I need a continuance is I was up all night from being very nauseous and still am with a very bad headache. Also I am to [sic] upset to do this today.

I am faxing in a copy of my letter dated April 17, 2012, that explains my medical condition and letters from my doctor.

Also I live over 1 ½ hours from the Court...."[4]

Along with her fax, Krutz attached medical records detailing her condition.

It should be noted that Krutz did not obtain Pomerantz's position regarding her request for continuance. Krutz did not appear for trial even though she had not

---

[3] Defendant's Exhibit 1.
[4] Defendant's Exhibit 2.

4

ascertained whether the continuance had been granted by the Court. Her witness, Julie Banks, appeared for trial, as did Pomerantz. In Krutz's May 25, 2012 motion to vacate hearing, the J.P. Court took testimony from Pomerantz in which she stated that on the afternoon of the April 25, 2012 trial, she saw Krutz working in her yard. Based on that testimony, the J.P. Court Magistrate denied the motion to vacate the default judgment, finding that Krutz's absence was not excusable neglect.[5]

On June 30, 2014, a hearing on appeal was held in this Court on the issue of whether a motion to vacate the default judgment should have been granted. Krutz testified that at the time of the hearing in J.P. Court she was suffering from a concussion and also had a brain aneurism. Krutz testified that she explained to the judge that she was on medication and had very strict instructions about her medication and that she had to rest the whole day.[6] When asked if she explained to the judge the events that happened the day before trial, Krutz responded "No."[7]

On cross-examination, Krutz was asked whether in her motion to vacate the default judgment in J.P. Court she claimed there was fraud, misrepresentation or other misconduct of an adverse party. Krutz responded "No."[8]

---

[5] Defendant's Exhibit 5.
[6] Transcript of June 30, 2014 hearing, p. 17-18.
[7] Id. at 19-20.
[8] Id. at 34.

5

Pomerantz testified as to why she named both Krutz and Comfort Palace in her complaint by stating, "I sued both Sharon and Comfort Palace jointly because I didn't quite know how to, who to sue."[9] Additionally Pomerantz testified that she observed Krutz washing her second story windows shortly after the scheduled J.P. Court trial.

## Standard of Review

On remand, the Superior Court held that this Court incorrectly applied an abuse of discretion standard to Krutz's motion to vacate the default judgment. The Superior Court held that the proper standard of review on a motion to vacate a default judgment is *de novo*. Thus, this Court is reviewing Krutz's motion *de novo*.[10]

---

[9] *Id.* at 42.

[10] All Courts in Delaware use an abuse of discretion standard when reviewing a lower court's ruling under Rule 60(b). *See Gwammesia v. Maynard*, 2013 WL 8844992 (Del. Com. Pl.); *Servpro Dover v. Walters*, 2011 WL 380521 (Del. Super.); *Willing v. Winogrodzki*, 645 A.2d 569 (TABLE) (Del. 1994). The Superior Court has not set forth a consistent legal standard for reviewing a J.P. Court denial of a motion to vacate default judgment.

*See Kenyon v. Setting*, 1992 WL 52200 (Del. Super.) (finding that an appeal of a J.P. Court denial of a motion to vacate default judgment required a trial *de novo* pursuant to 10 *Del. C.* § 9571, but that in "applying the *de novo* concept," the reviewing court "should hold an evidentiary hearing on *all factors pertinent* to that motion." Since the reviewing court may only review the magistrate's order denying relief and since a motion to vacate a default judgment under Rule 60(b) is left to the trial court's discretion, the "pertinent factors" are whether the J.P. Court abused its discretion.) (emphasis added);

*See also Bailey's Constr. Co. v. Clark*, 2001 WL 1198948, at *1 (Del. Super.) (stating that the proper standard of review for a J.P. Court's denial of a motion to vacate default judgment is *de novo* review of "pertinent factors." The pertinent factors are whether the magistrate abused their discretion. Thus the reviewing court should make a *de novo* determination of whether the J.P. Court abused its discretion.);

*See also Krutz v. Pomerantz*, Del. Super., C.A. No. S14A-07-004, Brady, J. (June 21, 2015) (finding that the Court of Common Pleas' *de novo* review of whether the J.P. Court abused its discretion by denying a motion to vacate default judgment was incorrect because *de novo* review of the motion is required. The

6

## Discussion

Krutz argues that her motion to vacate the default judgment below should be granted under Court of Common Pleas Rule 60(b). Specifically, Krutz argues under three separate subsections of Rule 60(b).

First, Krutz argues under Rule 60(b)(1) that her inability to appear before the Justice of the Peace court was caused by excusable neglect. A party moving to vacate a default judgment under Rule 60(b)(1) must satisfy three elements before the motion is granted: "(1) excusable neglect in the conduct that allowed the default judgment to be taken; (2) a meritorious defense to the action that would allow a different outcome to the litigation if the matter was heard on the merits; and (3) a showing that substantial prejudice will not be suffered by the plaintiff if the motion is granted."[11]

The Court will only consider the second two elements if the defendant has provided a satisfactory explanation that constituted excusable neglect.[12] "Excusable neglect" is defined as "that neglect which might have been the act of a reasonably

---

opinion specifically stated abuse of discretion was not the proper standard to use when reviewing a magistrate's decision to deny a motion to vacate);

*But cf Church v. Cottman,* 1998 WL 733753 (Del. Super.) (finding *de novo* review of a J.P. Court decision to dismiss an action should not be limited to the decision to dismiss, but review should be conducted "as if the proceedings in the lower court never took place." This case did not address a lower court's ruling under Rule 60(b), but rather it examined treatment of a motion to dismiss).

[11] *Credit Acceptance Corp. v. Bailey,* 2010 WL 2346220 (Del. Com. Pl.) (citing *Perry v. Wilson,* 2009 WL 1964787, at *1 (Del.Super.) (quoting *Verizon Delaware, Inc. v. Baldwin Line Constr. Co.,* 2004 WL 838610, at *1 (Del.Super.)).

[12] *Id.*

7

prudent person under the circumstances."[13] A defendant's failure to understand or comply with a court's rules and procedures does not constitute excusable neglect.[14] Defendants have the burden to prove excusable neglect.[15]

Here, Krutz has not met her burden of proof for excusable neglect. In her letter sent to the J.P. Court the day of trial, Krutz emphasized angry emails she received from her witness, Julie Banks, which suggested Banks would not be able to appear. She also mentioned that she has a headache and she was too upset to participate in the trial. She also mentioned that she lived 1.5 hours from the Court. When Krutz referred to a medical issue, she described being very nauseous the night before and having a very bad headache. Krutz did not attempt to notify Pomerantz or the witness of her continuance request.[16]

Notwithstanding her continuance request letter to the court, the witness did appear for trial,[17] belying one of Krutz's primary reasons for not appearing and needing a continuance. The opposing party also appeared for trial and opposed the continuance request.[18] There was also testimony from Pomerantz at the June 30, 2014 motion hearing that Krutz had been seen doing physical activity shortly after the 1:00 p.m. trial time.

---

[13] *Id.*
[14] *Id.*
[15] *Perry v. Wilson*, 2009 WL 1944787 (Del. Super.).
[16] Transcript at 42-43.
[17] *Id.* at 43.
[18] *Id.*

8

Specifically, Krutz was seen washing a second story window at her townhouse.[19] The report of her ability to wash windows refuted her statement to the court that she was too upset or too sick to attend trial. Krutz was also unable to provide either court with documentation of her illness on the day of trial.

The Court also notes that it had an opportunity to observe Krutz's testimony and demeanor at this Court's hearing on June 30, 2014, outlining what information she provided the J.P. Magistrate at the hearing on her motion to vacate the default judgment. Her argument at the July 24, 2015 hearing that she had to choose between compromising her health or attending the trial at the J.P. Court is simply not supported by the documentary evidence or her testimony. The facts presented to this Court makes it more likely that Krutz panicked when her witness became upset with the late subpoena service because Krutz felt she needed this witness to proceed successfully at trial. The problem is that the witness *did* appear. Krutz's testimony about her medical condition at the June 30, 2015, hearing was exceedingly exaggerated in comparison to her condition as described in her continuance request to the JP Court. Her statement in that request that carries some credibility is that she was too "upset to do this today."[20] Based on Krutz's demeanor and the inconsistencies in her testimony, the Court can give but little weight to her testimony.

---

[19] Transcript at 44.
[20] Defendant's Exhibit 2.

9

Moreover, even though Delaware courts have afforded motions to vacate default judgments under Rule 60(b) a liberal construction, reflecting the public policy favoring a trial on the merits,[21] that policy is not enough to overcome Krutz's lack of excusable neglect. This Court must also consider the integrity of the judicial process, which was undermined by the untimely continuance request and Krutz's failure to notify Pomerantz or the witness of the continuance request. Krutz's unreasonable behavior disrupted the Court's time and resources as well as wasted the time of the reluctant witness in this case. Thus, it is moot to inquire into whether Krutz met the second two elements of Rule 60(b)(1) as her actions were not of a reasonably prudent person, and therefore, she did not prove excusable neglect.

Second, Krutz argues under Rule 60(b)(3) that Pomeratz committed fraud upon the court by (1) naming both Comfort Palace and Krutz as Defendants, and (2) inflating the amount of damages requested. Krutz argues that Pomerantz intentionally defrauded the court by naming Krutz personally in the J.P. Court action even though she made rent payments to Comfort Palace and not Krutz. Krutz also argues that Pomerantz sought damages in excess and in violation of the Delaware Landlord/Tenant code through misrepresentations to the J.P. Court.

As to the claim that Pomerantz intentionally and improperly dragged Krutz into this litigation, this Court finds no merit. A finding of fraud on the court must be

---

[21] *Battaglia v. Wilmington Sav. Fund Soc.*, 379 A.2d 1132, 1135 (Del. 1977).

supported by clear, unequivocal, and convincing evidence.[22] The evidence presented by Krutz that rent checks were written to Comfort Palace is not nearly enough evidence to convince this Court that Pomerantz committed fraud on the court by intentionally suing an improper party. Additionally, Pomerantz testified that the reason she named Krutz as a defendant was that she "didn't quite know who to sue." It was Krutz who was advising Pomerantz who to write the next check to. It was also Krutz who owned the property that Pomerantz was renting.

Krutz's second fraud upon the court claim that Pomerantz intentionally inflated her damage claims fails for the same reasons as above. Krutz proffered no evidence to illustrate how Pomerantz attempted to or committed fraud on the court.

Third, Krutz argues that the motion to vacate should be granted under Rule 60(b)'s extraordinary circumstance provision, Rule 60(b)(6). This provision states that a court may relieve a party from judgment for "any other reason justifying relief from the operation of the judgment." After reviewing the testimony presented to the Court at the June 30, 2014 hearing, party submissions and oral argument, this Court does not find a reason to relieve Krutz from the default judgment as no extraordinary circumstances existed to relieve her from the judgment.

## Conclusion

---

[22] *Smith v. Williams*, 2007 WL 2193748 (Del. Super.).

For the foregoing reasons, Defendant's motion to vacate the default judgment is

**DENIED**.

**IT IS SO ORDERED** this ___8th___ day of October, 2015.

The Honorable Rosemary Betts Beauregard